**MISSOURI PRINTING AND ENGRAVING COMPANY, Appellant,**

v.

**Elijah CRIPPEN, Trustee of Bankers Discount Corporation, Debtor, Appellee.**

No. 15300.

United States Court of Appeals
Fifth Circuit.

July 15, 1955.

Rehearing Denied Aug. 15, 1955.

Neil Brans, Dallas, Tex., Irion, Cain, Bergman & Cocke, Dallas, Tex., for appellant.

William C. Herndon, Jr., Thomas R. Hartnett, III, Dallas, Tex., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from an order in a Chapter X corporate reorganization proceeding, 11 U.S.C.A. §§ 501–676, disallowing in part appellant's claim previously allowed in full in a Chapter XI proceeding, 11 U.S.C.A. §§ 701–799, involving the same insolvent corporation.

On April 30, 1953, the debtor filed a voluntary petition in bankruptcy in the United States District Court for the Northern District of Texas, sitting at Dallas, Texas, for an arrangement under the provisions of Chapter XI of the National Bankruptcy Act of 1938 as amended. During the proceedings under Chapter XI of the Bankruptcy Act, the matter was referred to D. M. Oldham as Referee in Bankruptcy. During the period of reference appellant, Missouri Printing and Engraving Company, filed its claim in the amount of $19,467.44 with the Referee on November 10, 1953. Such claim was allowed by the Referee in the full amount thereof. At that time such claim had attached to it all invoices upon which the amount claimed was based.

On March 31, 1954, petition was filed in the United States District Court, Northern District of Texas, Dallas Division, sitting at Dallas, for a reorganization under the provisions of Chapter X of the Bankruptcy Act by three creditors. After answer was filed to said petition by the debtor and the creditors committee appointed under the provisions of Chapter XI, the United States District Court on April 12, 1954, appointed Elijah Crippen Trustee in Reorganization under the provisions of Chapter X of the Act. Hearing on the plan of reorganization was, after notice, had on May 17, 1954, and an order was entered confirming the amended plan of the Trustee. This order provided among other things that " * * * Claims heretofore filed in the proceedings during the period that this cause was pend-

ing in this court under the provisions of Chapter XI of the Act of Bankruptcy shall be deemed filed in this proceeding and shall constitute validly filed claims for the purpose of participating in the plan of reorganization * * *".

Under the amended plan the general unsecured creditors had an election submitted to them to accept 50% of their claim in cash, or 80% of their claim in new 3% collateral trust notes which were secured and payable in 1971.

Appellant made its election to receive 50% of its claim as allowed.

The Trustee filed his objection to appellant's claim on or about the 28th day of June, 1954, some seven months after appellant had filed its claim in the Chapter XI proceedings and after the matter had been transferred by the court to the Chapter X proceedings. As a basis for objection, the Trustee alleged first that debtor was not justly and truly indebted to appellant; and, second, that he had investigated the claim and that debtor was indebted to appellant only in the amount of $10.00. In his prayer, the trustee prayed that appellant's claim of $19,467.44 be disallowed.

On August 2, 1954, the District Court heard the objections of the Trustee to the several claims which had been filed, the evidence of the several creditors and claimants in support of their claims and entered its order with reference to said objections and claims and in particular denying appellant's claim for all purposes with the exception of the $10.00.

The trial court considered and passed on this claim on its merits. He did not hold that there was any defect in the filing of the claim under the Chapter X proceeding, and this appears to us to be correct. The only question, therefore, is whether the finding of the trial court disallowing the substantial claim of appellant was clearly erroneous.

The only evidence on the question of whose debt this was came from appellant's witness, Milton Fishman, its pres-

ident. His testimony categorically stated that Kennedy, the president of the bankrupt, asked him to visit Dallas, "that he had a lot of advertising he wanted to order"; that he introduced Fishman to Gage, the executive director, and Millner, as comptroller of the bankrupt, and he told Fishman to accept his orders from Gage "on all advertising which was to be prepared for his company;" that pursuant to that conference and "that order" he printed up the material made the basis of the $19,-467.44 claim; that the printing related to a large number of loan offices scattered throughout the southwest, which he called subsidiaries; that the printing was done in the name of each such subsidiary; that Gage instructed him to, and he did, send original vouchers to the subsidiary with copy to the bankrupt. Fishman produced and there were introduced in evidence numerous letters on the stationery of the bankrupt, signed by Gage as "Executive Supervisor," ordering printing for various offices, some of it being for "all of their offices."

■ Beyond making an effort to prove by cross-examination of Fishman that Kennedy and Gage were also officers of "the various subsidiary corporations," which he failed to do, appellee made no counter showing to prove that the officials who were admittedly officers of the bankrupt, were in reality acting for the separate corporations. The only evidence that the debts were due from the subsidiary corporation was the fact that the printing work embodied material designed for the separate offices and it was billed to them separately. Unless, however, the court was to disregard the positive sworn testimony of the president of the creditor, these ambiguous facts were explained away. If the facts were contrary to the story given by the one witness, the burden was on the trustee to produce the witnesses to support that position.[1]

1. It is not inappropriate, in this bankruptcy matter, since the treatment of creditors' claims were all handled by the court, as a part of a single hearing, to

Neither brief on file here refers to any law or cites any case in support of the contentions of the parties. Neither do we find it necessary to do so. The trial court ignored the sworn testimony that was adequate to prove the debt of the bankrupt to the creditor and there was really no conflict in the evidence. There was no sufficient basis in the evidence to disallow appellant's claim, and the order appealed from is clearly erroneous. The order is, therefore, reversed and the court below is directed to enter an order allowing the claim in full.

note that another creditor's claim for a much smaller amount, arising from sign painting work done for the various subsidiaries and billed to them at the direction of Gage, was ordered by the court to be paid in full. The only distinction between the claims was in the size of the debt.